The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having a matter of business for the Honorable, the United States Court of Appeals for the Fourth Circuit must withdraw now and give their attention. For the Court is now sitting. Godspeed to the United States and this Honorable Court. Thank you very much and welcome to this video session of the Fourth Circuit Court of Appeals where we're going to hear argument in Miller v. MD Dept. of Natural Resources. I'm Judge Agee. Judge Stacker is with us in Charleston, West Virginia and Judge Rushing in Asheville, North Carolina. I'm sure you've already been given the rules of our argument today. Primarily, if you see the Judge's hand go up or you hear some other voice asking you a question, that's the time for you to stop. So, with that said, Mr. Goldsmith, we'll hear from you. Thank you and good afternoon. Mr. Miller has pleaded his claims here sufficiently through the third amended complaint such that he should be permitted to go forth into discovery. Case should be reversed. Central question before the court is whether the allegations with the benefit of inferences favoring the plaintiff, here the appellant, are sufficient to survive a motion to dismiss for failure to state a claim. I intend to emphasize the following central points. First, the complaints and materials that were before the district court alleged clearly that Lieutenant Marconi, Miller's supervisor, was a stout decision maker in a discriminatory, retaliatory firing process with knowledge of Miller's condition and his protected reasonable accommodations requests. Second, since Lieutenant Marconi knew about Mr. Miller's impairments and the DNR failed to make a showing that Miller's impairments were minor, Miller is entitled to the denial of the motion as to regard it as disability. Third, since Mr. Miller sufficiently alleged his herniated disc pain impairment substantially limited him through his neurologic system and deprivation of sleep, he properly alleged that he is a person with a disability and is entitled to reversal on the disability discrimination count. Mr. Goldsmith, let me ask you some preliminary questions. With regard to count one, your failure to accommodate claim, I wanted to be sure I understood the basis of your claim. I assume you're making a claim based on actual disability as opposed to a regarded as disability claim. Is that accurate? Yes. For a failure to accommodate, yes. Okay. So, with regard to count one, and I would assume the same thought would apply with respect to count three, which I read to be an unlawful termination based on an actual disability claim as opposed to regarded as or perceived as. In count four, you would need to meet the basic Twombly standards for plausibility. I suppose as to all the counts, Judge Agee, I would need to meet them. So, tell us as specifically as you can where you pled facts under an actual disability argument for count one in particular that discussed the extent to which a major life activity was affected as opposed to stating that there was a major life activity. Well, I'm not sure, Judge Agee, if you're looking for precise citations in the complaint. If so, which complaint? But I can certainly go with what the essence of it is here. Let me try to center it a little bit more. I'm looking at the second amended complaint, which is substantially the same as the third. But, for instance, when you're pleading the facts, you talk about an injury causing difficulties or that there's a possibility that perhaps his disability affected certain performance. What I'm looking for is something that's more detailed as to how it affected it, how long was it, what was the extent of it. I'm just looking for where your best pleading points are. Thank you. So, first of all, it's important to note that the fact recitation needs to be connected up to the statement of claims in order to really get the gist of what's being alleged. So, if one looks, first of all, at Joint Appendix 187, actually, you'd have to go back to where it's referring back to Count 2 as well, 186, 185. Essentially, in the statement of claims, the very specific language is used that substantially limiting impairments. When we get to the third amended complaint, it says that it's not just substantially limiting a major life activity, but also a major bodily function. So, that's sort of the most fulsome explanation of the whole thing. But all of it relates up to the fact predicate that Mr. Miller suffered the injury which resulted in herniated discs. Surgery was possibly indicated for a while. It looked like he was going to need the surgery. He needed significant pain medications. Epidural was under discussion for that. That continued to impact him. I went in the screen there for a second. Perhaps we could look to your regarded as having a disability claim. What is your best argument there that you've pled sufficient facts? Yes, I mean, I think that one is a lot simpler because the impairments that I just described don't need to reach the substantial limitation point in order to be sufficient under that theory. So, you know... You're under Count 4 now. Is that right? I believe that's right. Count 4 in the second amended complaint. I don't think I changed the numbers. I tried to keep them consistent as I went through the additional complaints. So, for the regarded as claim, the DNR would have been required to show that the impairment that I just described or impairments I just described were both transitory and minor in order for a dismissal to potentially be appropriate. That wasn't shown here. In fact, with regard to the minor... The transitory and minor is a defense. As you indicate, something DNR would have needed to show. Not something you would have needed to plead. Right? That's correct, Your Honor. That's correct. And so here, neither DNR didn't set forth anything with regard to that defense. And in fact, the district court didn't speak to the minor prong of that at all either. And so, really, the question there is, was there an impairment that was significant? And I think it's important to show that the defendant, in this case DNR, was aware of the impairments, which of course they were. There's a lot of evidence for that. And I think that's really all that needs to be shown in order for that regarded as claim to be sufficient and truly should be reversed on that basis. Judge Agee, did you want me to go back to what you were questioning about? Or, Judge Thacker, did you have another question about that? Not unless you want to. I think that the impairment is pretty clear and some questions have been raised about the extent of the limitations. But I think that both the statute and the regulations are pretty clear that for pleading purposes, not so much needs to be shown for that. And what was shown here is that this was a very serious situation at the time for Mr. Miller, and it wasn't yet resolved at the time that his employment ended. So I think that there was plenty shown on substantial limitation. I want to make sure that during my principal argument that I do get a chance to touch on the retaliation claim here, because I think it's a very, very strong claim. First of all, the district court erred by stating that proximate timing could never be enough in itself to show a causal connection that would allow a claim to go forward. That's not correct. This court so decided in Hoyle and Breeden from yesterday. Okay. Well, aside from temporal proximity, what is your best evidence of causation on retaliation, aside from the temporal proximity? It's it's the pattern of antagonism that's going on between Marconi. It's really one. It's one sided. Marconi's pattern of antagonistic actions toward Mr. Miller, particularly flagrant, was refusing to allow him to take pain medications that weren't even. I thought in the correct me if I'm wrong, but I thought in the third amended complaint, you added pleadings that that the individuals to whom he had complained and not received the accommodation or what have you, that those some of those individuals were actually on the committee or on the in the group of people who decided whether he should be retained or not. Is that correct? That is correct. So so basically what happened is when DNR filed its motion to dismiss the attached to it documents that showed, number one, that Lieutenant Marconi was the moving party behind the termination because he he he was a formal recommending official sending a letter to his superiors asking for the firing. He then convened the disciplinary review board. I'm sorry, the review board came first, but he convened that board with three other officers who made the decision. Two of them assured Mr. Miller that they didn't think he had cheated on a test, and one of them apparently dissented from the decision to fire him. But yes, what you say is exactly what the record shows. Can I can I redirect you from retaliation back to failure to accommodate for just one second? What is the the claimed adverse employment action for failure to accommodate? Is it a is it a chain of inferences from the firing or that, you know, he was released from the program, but he he claims he was tired and he was tired because he couldn't take his pain medication. And that was the the failure to accommodate. He was denied his pain medications and he was denied accommodations with respect to the exercises and the physical workouts that he had to do. So our contention is that that he was capable of performing the job with accommodation, being in the program with accommodations and those accommodations in the form of the medication, in the form of the exercises were denied to him repeatedly. But don't you have to have in addition to the not getting that accommodation, don't you have to have some sort of adverse employment action? No, no, actually, Your Honor. Actually, no, that's the essence of a reasonable accommodation claim is that the individual was denied the accommodation. And so so frequently you might have a case where the where the individual was still employed. This is a little different because he was later terminated. But in such a case with the individual still employed, the whole remedy might be to give him the accommodation that he was seeking. So our contention is that he should be reinstated and given those accommodations. And so the accommodation failure to accommodate stands in itself. The adverse action requirement is there as to the I guess discharge discriminatory discharge. Otherwise, I guess I'm just wondering if if someone doesn't get an accommodation, but it doesn't impact their work life at all, then where's the where's the adverse action there? Of course, there doesn't need to be an adverse action per se for a reasonable accommodation claim like there does for a fire. So basically, you could divide your A.D.A. type cases between the ones that require an adverse action other than a failure to accommodate and a failure to accommodate type case. So we're making both claims here, both that he should have been accommodated while he was on the job and that there was an adverse action in the form of a firing. I see that my time has expired. Before you go, Mr. Goldsmith, particularly with regard to your retaliation claim. Would we because you certainly set out additional facts in your second and third amended complaints. Would we need to find that the district court erred or abused its discretion in determining that filing those amended complaints would have been futile in order to get the facts that are in those complaints before us? No, Judge Agee, there are three cases, one of which I cited subsequent to the one that was cited by the DNR, which would say that this is that problem presents as a de novo question rather than a question of abuse of discretion. Even if it were under abuse of discretion, we would maintain that discretion was abused. But there are three more recent cases of this court that say that when futility is being alleged in the form of a failure to meet the 12B6 standard, that that's a de novo issue. May I follow up, Judge Agee? Yes, ma'am. Please do. I want to make sure I understand. I understood perhaps Judge Agee to be asking if we didn't consider and maybe it's just the way I was looking at it. If we didn't consider the Second and Third Amendment complaints at all, could you still prevail only on your initial complaint or do we need to consider the Second and Third Amendment complaints? I don't think you need to consider the court needs to consider those complaints in order to find for Mr. Miller. However, I think that the court ought to be considering those because the futility finding was errant because there was significant evidence that was before the court that it didn't consider submitted by both sides, actually. And so in not going forward into a Rule 56 consideration, the court left a lot of that on the table and really those complaints were not futile and needed to be considered. I understand. All right. Thank you, Mr. Goldsmith. You've got some time on rebuttal. Mr. Wolfe, we'll hear from you. Good afternoon, Your Honors. May it please the court, we're asking the court to affirm the decision of the District Court of Maryland for a number of reasons. First and foremost, with respect to Count 1, the failure to accommodate claim and Count 5, which is the retaliation claim, the unlawful termination retaliation claim that the questions were going to earlier. Mr. Mr. Wolfe? Yes. Maybe just be my screen, but I'm only seeing you from the eyes up. I'm sorry. Let me see if I can. Does that help? Yes, sir. Okay. So with respect to Counts 1 and 5, our position is that Mr. Miller has quite simply failed to allege the but-for causation requirement. That is that he was terminated but for his request for accommodation. And that argument really emanates from the fact that there is no allegation that the persons he alleges were responsible or knew about his request for accommodation actually made the decision to terminate him. He makes allegations regarding Corporal Hunt, Corporal Beckwith, Lieutenant Marconi, that he made requests for accommodations to those individuals at various points, specifically at paragraph 26 in the First Amendment complaint. But what what is noticeably missing is any allegation that they actually made the decision to terminate him. Conversely, there is no allegation that Colonel Ziegler, the one person who did send the letter, made the decision to terminate him. Colonel Robert K. Ziegler. This is the joint appendix at 126 to 128. It's a three page letter for which it lays out the. Yes, Your Honor. But doesn't that go more to approving the case, more to a prima facie allegation rather than just what he needs to prove or show at this stage, which is just a reasonable inference of causation rather than actually putting him to the proof of making the prima facie case at this point? Well, I think it goes to failure to state a claim, certainly with respect to the fact that he fails to allege that the persons who may have been aware of his request for accommodation were actually responsible or had any part in his termination. There's no but for causation established in the allegations of the complaint. And that's really the point we're trying to make here. But I guess my point is he doesn't have to establish the but for causation at this stage. He just needs a reasonable inference of causation. Well, and I think that's our position is that's completely lacking. I mean, if he's simply made requests to persons in the cadre, but there's no indication in the actual First Amendment complaint as to who made the decision to terminate him, then certainly there's no nexus to link up those requests for accommodation. Yes, Your Honor. Sorry, over here. That's okay. Shouldn't we be considering the most recently amended version of the complaint? If the district court ruled about futility, then it's a legal question for us whether even the Third Amendment complaint is not sufficient to state a claim. The First Amendment complaint is kind of old news now. Right. Well, we're asking the court to affirm the decision of the district court in dismissing the First Amendment complaint and also to affirm the district court and its denial of Mr. Miller's motion for leave to file the Third Amendment complaint. To go to your question, the Third Amendment complaint is futile as well because it simply restates, not anew, it just simply reiterates the same allegations regarding the three injuries of the cervical herniation, the herniated disc, and the neck injury and also the request for accommodation.  But just to the point that you were making previously was that it didn't name the particular individuals that he had complained to or requested accommodation, but the Third Amendment complaint corrects that, as I understand it. The Third Amendment complaint does say that those particular individuals were involved in the decision. Right. And to be clear, the Second Amendment complaint, all three complaints raise this issue of termination and who the requests for accommodation were made to. In fact, if you go back to the First Amendment complaint, there are allegations regarding who the requests for accommodation were made to. With respect to the Second Amendment complaint, Mr. Miller attaches his EEOC file in an effort to bolster his claims. And so at that point, it became an issue of us trying to rebut those claims and to point out that, look, this is not a case about a failure to accommodate or a disability. This is a case completely about his failure to meet the legitimate expectations of his employer. So if you all are wondering, well, how did we get to this point of talking about documents extraneous, that's where it came from. Yes, Your Honor. Let me ask you, he does plead concussory, but he pleads that he did meet the expectations of his employer. But wouldn't that come at another stage of the proceedings? Absolutely not. He doesn't have to plead in rebuttal to whatever your argument's going to be at a 12B6 stage, does he? Well, no, he doesn't. But I would say that he is certainly not pled that he's a qualified individual with a disability for a number of reasons. One's because he hasn't alleged that he's substantially limited in any major life activity because all three of the alleged injuries are nothing more than short-term impairments that aren't sufficiently severe to even be considered a disability. Wouldn't that, though, go to Counts 1 and 3 as opposed to Counts 4 and 5? Well, I think it goes to all three of these, Judge, because in Count 1, he's alleging a failure to accommodate based on his alleged disabilities. Count 3, an unlawful termination based on Mr. Miller's alleged disabilities. Count 4, discriminatory termination based on a perceived alleged disability. And Count 5, unlawful termination based on Mr. Miller's alleged protected activity of the request for accommodation. So all perceived or regarded as disability, you have different standards than if it were a claim of actual disability. Right. I would agree with that, Your Honor. Now, with respect to that Count 4, the regarded as disability, all three alleged injuries last well less than one month. In other words, with respect to the alleged, yes, Your Honor. But that, I think you're going to the transitory and minor point, which is a rebuttal. It's not something that needs to be pledged. The EEOC regulations include that in the section listing defenses. And defenses do not need to be pledged by him, correct, by an appellant? I would assert, Your Honor, that based on the case law, the regarded as definition of disability does not apply to impairments that are transitory and minor. So it's our position that he would need to actually plead these regarded as elements. Yes, Your Honor. But to follow up Judge Thacker's question, it's not a question of does that limitation apply, but at what stage of the proceedings? And here we're on a motion to dismiss. So I'm not understanding why the plaintiff would need to plead a rebuttal of an affirmative defense that has yet to be asserted in effect. I'm not sure it could be asserted at the 12B6 stage. If we were at summary judgment, it might be different. But I'm not sure that that argument has any substance at a 12B6 stage. Well, Your Honor, I would assert that with respect to the definition of disability under 42 U.S.C.A. section 12-102, and if you go down to 3B, it plainly states that the regarded as definition shall not apply to impairments that are transitory and minor with an actual expected duration of less than six months. All three injuries are pled in the First, Second, and Third Amendment complaint as lasting well less than six months. In fact, the first two, the alleged neck injury and cervical herniation, last no more than 23 days and 26 days respectively. He's cleared to return to full duty. That's why all three complaints fail as a matter of law to state a claim with respect to disability, whether you look at it as actual disability, a record of such impairment, or being regarded as disabled. The last alleged injury of the cervical, the herniated disc rather, he simply alleges that he tells his classmates he thinks he has herniated disc and that he may need to have surgery in the near future. That's all we have. I mean, this is a complete case about a failure to state a claim without a doubt, and I think that's why it made the job for the district court so easy. In addition to the fact that it's not a case about failure to accommodate or retaliation, this is a person that actually admits to cheating on an exam. He admits to being caught on the exam, and he admits to being terminated for cheating on an exam during his academy experience. So this was an integrity violation, an integrity violation that goes completely to whether or not he is capable of being a natural resources police officer, and he's shown that he's not because he cannot perform the essential functions of the job. That is to have integrity as a police officer. I just want to point out to the court, the fact that he was caught cheating, admitted to cheating, and was terminated for cheating is found in all three complaints, in the first amended complaint of paragraphs 83 to 84, and then in paragraph 87 in both the second and third amended complaint, and then in the paragraph 168 in the second and third amended complaint, as well as paragraphs 187 and 188. So this is a common denominator. This whole issue of the cheating, the academic dishonesty, it's not something that we raised. It's something that he actually admits to in the allegations of all three complaints. Yes, Your Honor. Does he admit to cheating, or does he admit that that was the reason given? Well, he doesn't admit that, or does he allege that that was the reason given for his termination? He says that was a pretext, that he wasn't cheating, and he alleges that he, like other cadets, would have been given the opportunity to retake the test, that he failed the exam, or something like that. Your Honor, he does both, and I'll point you to paragraph 87 of the first amended complaint, and this is actually parroted in paragraphs 144 of the second and third amended complaint. So in paragraph 87, it says, Mr. Miller told the instructor that he had already answered some of the other questions with reference to impermissible sites, and asked if he should turn in his test. So right there, he already answered some of the questions with reference to impermissible sites. You can—he plainly is admitting to the fact that he—go ahead, Your Honor. He's admitting he did that, but as I understand the allegations, he's saying he did that not to intentionally cheat, but because he did not understand the instructions. Or that he was falling asleep. And I understand that your client's position is that he was cheating, and that's why he was terminated. Right, absolutely. But I just don't read his allegations as admitting that he cheated. Well, I think in 87, he admits to using impermissible sites. So if he's admitting to using impermissible sites, then certainly that's academic dishonesty based on the instructions that were given. If you back up to the previous allegations— Counsel. Yes, Your Honor. Doesn't he also plead that some of the folks he talked to said that they believed him, and they thought he was honest when he said that he didn't—he wasn't cheating, he wasn't intentionally disobeying the rules? I think there's an allegation at the end of the first amended complaint and the other amended complaints about one sergeant who he alleges said something to that effect. Interestingly, there's no allegation that anybody else said that. You know, the other sergeant— Does there need to be to have a sufficient complaint? Does there need to be— How many allegations of how many people saying he's honest do you need to have a sufficient complaint? Well, I don't know that this is even a relevant question, quite frankly. I mean, I think what's really relevant here is the fact that he's failed to allege that his request for accommodation ever made it to the persons who actually made the decision, Colonel Ziegler, anybody in the chain of command. I mean, we attached numerous documents to our motion to dismiss that clearly show this just didn't end with a disability review board. Go ahead, Your Honor. Before you leave that point, let me ask you— this takes you back to a point you made at the very beginning. The letter from Colonel Ziegler at page 126 of the appendix, was that considered by the district court in its ruling? I thought that it was excluding most, if not all, of the submissions by the parties and coming to its judgment in this case. Your Honor, you're absolutely correct. The court did not take into consideration what DNR did to— the reasoning for DNR's termination of Mr. Miller. It says that in its opinion. I brought it up. We specifically brought it up because Mr. Miller, in his filings with the court, made the argument that DNR did not have a right to bring up— there's case law that he argues that DNR, court's indulgence here, did not have the right to bring up this issue. He cites the Kline v. Catholic Diocese case, which is a pregnancy discrimination case under Title VII from the Sixth Circuit. The Fourth Circuit and Work v. Ohio Casualty Insurance Company specifically declines to follow the Kline v. Catholic Diocese case and says that the plaintiff must show that he met the employer's legitimate job expectations to prove his prima facie case, and the employer may counter with evidence defining his expectations as well as evidence that the employee was not meeting those expectations. We've brought this up. The plaintiff doesn't have to plead a prima facie case at this point. No, he doesn't, Your Honor. But, again, he raised this in his second amended complaint by putting in the EEOC file and asserting that, look, the EEOC file shows that this clearly was a case about retaliation, when, in fact, if you look at the EEOC file at JA, the joint appendix 244 and 266, the conclusions by the investigator plainly state that the respondent, DNR, provided a legitimate, nondiscriminatory reason for his decision to discharge the complainant, and there's no indication that this was a case about retaliation, but it was more about his academic dishonesty. So, with respect to the second and third amended complaints, all that the appellant has done is restate the allegations from the first amended complaint, that is that these are nothing more than short-term impairments that are not sufficiently severe to qualify as a disability under either the Rehabilitation Act or 42 U.S.C. 12-102. And I get the language from that from the Summers v. Alterm Institute Corporation case at 740 F. 3rd 325. That's a Fourth Circuit 2014 case. So, again, the common denominator being that the alleged neck injury, the alleged cervical herniation, the alleged herniated disc, all of which last no more than 26 days at the most, are nothing more than de minimis injuries alleged in the complaint. So he's failed to state a claim for a disability in all three complaints. It's a futile effort for that reason, and also, again, for the reason that he's admitted to the cheating. And to go back to the court's point, like I said, he does do both. He admits to the cheating in the one paragraph, in paragraph 87, but then in 111, I think this goes to the one judge's point there that he says in paragraph 111 of the first amended complaint, having not received or having misunderstood the instruction, perhaps on account of being denied necessary medications and therefore being unable to sleep sufficiently, Mr. Millow did a Google search to obtain the information. So, yes, he's trying to explain away the use of these impermissible sites by this alleged failure to accommodate. But, again, that fails because the allegation regarding the failure to accommodate fails because there's no allegation that the persons who actually received the failure to accommodate were actually responsible for his termination. One point I wanted to bring up with respect to the FEPA claims, after DNR filed its brief in this case, Your Honors, on April 19, 2019, the Fourth Circuit ruled in Pence PENSE versus Maryland Department of Public Safety and Correctional Services that the state of Maryland was immune from FEPA claims because the state of Maryland has not waived its sovereign immunity. So our position, I'd be remiss in not making the court aware of this and bringing it up at this point, even though it was not specifically argued, we just didn't have the benefit of this case until after we filed our brief. And, again, that is Pence versus Maryland Department of Public Safety, and our position is that his FEPA claims should be dismissed in counts 1, 3, 4, and 5 because DNR has not waived its sovereign immunity for those claims. So, Mr. Wolfe, if I could suggest that with respect to this last point that you made about the new case, that you might send the court a Rule 20-AJ letter that sets that out. Okay, thank you, Your Honor. I never had this happen before, so I... With respect to the third amended complaint, one thing that stands out with the alleged injuries, too, is with respect to the first injury, the neck injury, he simply alleges that he has a neck injury. There's nothing to indicate any sort of medical diagnosis or anything of that nature. With respect to the neck injury, the cervical herniation or the herniated disc, or the neurological pain that he attempts to allege in the third amended complaint, with respect to the neurological pain, it's our position that he's failed to establish that he suffers from a disability because he does not allege how the neurological pain substantially limits a major life activity. And again, the neurological pain is sort of added on with respect to the neck injury, which is nothing more than a short-term impairment lasting no more than 23 days before he was cleared to return to full duty. Mr. Miller asserts that the EEOC investigator treated this as a neurological case, which is simply not the case. If you look at JA 244 and 266, there's no reference by the EEOC investigator that this was a neurological case. So for all these reasons, we've asked the court to affirm the decision of the district court in dismissing the first amended complaint and denying Mr. Miller's motions for leave to file second and third amended complaints. Thank you. All right. Thank you, Mr. Wolf. Mr. Goldsmith, you have some time left in rebuttal. Thank you. There is one central fact and law scenario here that is being miscast by DNR over and over again. That is the question of Lieutenant Marconi and what his involvement was in this scenario. You wouldn't know it from counsel's presentation. But on August 12th, 2016, Mr. Lieutenant Marconi sent a letter to Colonel Ziegler and it states in the last sentence, I recommend that officer candidate Tom Miller be dismissed from the academy and his employment with the Natural Resources Police be terminated. That's an inconvenient fact that kind of undermines much of what they're trying to argue here. The argument that Marconi wasn't involved when he was involved in the day to day interactions, and that's all spelled out in great detail. He was the person who was denying the medication. He was the person who was denying the other accommodations. He's the person who recommended the firing. He's the person who convened the DRB. Two of the other people at that DRB had told Mr. Miller, and Mr. Wolf is trying to play this down, but two of those people had told Mr. Miller that they did not believe he had cheated on the test. And one of them apparently, based on the documents that DNR itself generated, one of them dissented from the decision to proceed with firing him. Now, under Staub, the Supreme Court is clear that a decision maker doesn't have to be the ultimate person who signed a document saying they were firing someone. A moving party can also bind the employer. That's black letter law at this point, basically. So the attempt to evade their own documents that they generated here fails. Now, a related problem is counsel is saying that over and over again that Miller admitted to cheating, but as Judge Thacker correctly pointed out by questioning, he didn't admit to cheating. He admitted to having looked at the improper sites that he wasn't supposed to look at. He missed the instructions. And I want to note that if you look at the chronology here, that incident, and he had passed every other test, so the whole argument about him not meeting the legitimate expectations or being otherwise qualified is without merit. But he had passed all these other tests. On that day, he was in the state of being denied his medications by Lieutenant Marconi and screwed up. Didn't follow the instructions the way they apparently were given. Two out of the four on that DRV didn't think he meant to cheat. I'd like to depose those individuals and find out exactly what they thought, exactly what they said. I think that we pleaded enough to get to that point. And again, that's Hunt and Jackson. Now, in addition, the contention that was made toward the end of Mr. Wolf's argument that there was no medical information. First of all, the statute itself is clear that medical records are not required, even ultimately, much less at the pleading stage. Nonetheless, here we have in the record both the June 30th and the September 1st medical visit records from the treating clinics. And also Mr. Miller's own explanation about... Well, actually, there was a 20-pound lifting restriction that was broken off, I believe, in mid-June. And we have that in the record also. So the fact that this was a serious medical problem... Mr. Goldsmith, the records you're referring to, were those attachments to one of your complaints? Yes, the Second Amendment complaint attached records. And the district court considered those? Apparently not, because the district court never acknowledged that those were there and what impact they might have. So to the extent that the district court might have considered them, notwithstanding its futility conclusion, it's really not clear how. Because they clearly set out when he visited doctors, what diagnoses existed, what possible treatment might be needed, what medications needed and prescribed. All of that was there and should have been considered. The argument pertaining to... Court's indulgence for a moment. I think I'd like to take, if I have another minute here, which I see that I do, I think I'd just like to emphasize the error in the district court's futility finding and the way it handled the additional evidence from both sides. That came out, that was available to the court, that it claims not to have considered it in the way that it ultimately ruled and disposed of this case. Again, and this did come out in my initial argument, I don't mean to be redundant, but there are three decisions of this court that are clear and are the most recent. That this futility argument, in the context where futility is found because there is alleged sort of failure on the merits so that there's dismissal. In that context, this is something that should be reviewed de novo. Basically, the futility conclusion there merges with the underlying claim. I really don't think that the futility, I don't really think that binds this court in any way. I think the court needs to look at it afresh and look at the evidence that was there and is now in the joint appendix and reach its conclusion that way. For all the reasons that we've set forth here today and in our briefs, we'd ask that the case be reversed and sent back to the trial court for discovery and ultimately trial. Thank you. I want to thank both counsel for their arguments today. Our tradition is to come down from the bench and shake hands with counsel, which obviously we can't do, so we'll send you a virtual handshake. I miss it, your honor, I miss it. Well, you'll have to come back on another occasion. So I'd ask Mr. Coleman if he would adjourn court and if the judges would stay on once Mr. Dean has removed counsel from the screens, we will have our conference. This honorable court stands adjourned. Signed and diagnosed by the United States in this honorable court. Thank you very much.
judges: G. Steven Agee, Stephanie D. Thacker, Allison J. Rushing